# King *against* King.

| Watts & S. |
| --- |
| 1ws205 |
| f 196 328 |

| W. & S. |
| --- |
| 1ws205 |
| f 199 70 |

A bequest of the interest of £600 to C. for life, and after her death "I give and bequeath the said principal sum to my children, hereafter named, or their heirs, to be divided among them share and share alike." *Held* to be a vested legacy, and upon the death of either of the children his share would go to his personal representative.

1 WS 205
31 SC 618

**ERROR** to the Common Pleas of *York* county.

Elizabeth King against Jacob King and George Cown, executors of Philip J. King, deceased.

This was an action for a legacy, in which the following case was considered in the nature of a special verdict.

Philip J. King, the elder, made his will in writing, dated 29th November 1791, which was duly proved, and letters testamentary granted thereon to Philip J. King, Jr. In said will is this provision:

"Item: I give and bequeath to my beloved wife, Catharine, the yearly interest of six hundred pounds, to be paid to her yearly, and every year during her widowhood, and no longer, which sum

[King v. King.]

of £600 I order my executors from time to time to put to interest for the purpose aforesaid. And after my wife's decease, or widowhood, I give and bequeath the said principal sum to my children, hereafter named, or their heirs, to be divided among them, share and share alike."

Afterwards, in said will, he names nine children, one of whom is Henry King, the father of the plaintiff. Henry King died the 15th of February 1817. Catharine, the widow of said Philip Jacob King, died the 7th of February 1826. The executor, Philip Jacob King, is also dead. And the defendants hold the share of said Henry King for the right owners. The administrators of Henry King, claiming the same as a vested legacy to said Henry King, and his children claiming in opposition. If the plaintiff is entitled to recover, judgment to be given for plaintiff for one-third of one-ninth of said sum of £600, with interest from said widow's death; otherwise judgment for defendants.

The court below (Durkee, President) rendered a judgment for defendants.

*Hambly*, for plaintiff in error, argued that the intention of the testator was apparent that the legacy was not to vest until after the death of the widow, and cited 4 *Watts* 130, 143; 17 *Serg. & Rawle* 118; 9 *Watts* 403.

*Barnitz*, Jr., and *Barnitz*, for defendant in error, contended that the word "heirs" was used merely to express an absolute gift of the legacy. A legacy is contingent when it depends upon an event connected with the legatee personally; where the event is of another kind, as for convenience and the like, it is vested. Here the event was the death of the widow, a matter not personal to the legatee. 12 *Serg. & Rawle* 112.

The opinion of the Court was delivered by

GIBSON, C. J.—It is impossible to distinguish this case from *Patterson* v. *Hawthorn*, (12 *Serg. & Rawle* 113) in which the fund was bequeathed to the children *at* the death of the widow to whom the produce of it was given during her life, while here it is bequeathed to them *after* her decease—a difference of expression which is immaterial to the question of intention, as the words do not, in either case, strictly import a present gift; for as we determined in *Moore* v. *Smith*, (9 *Watts* 403) a naked direction to *pay* at a given period, as much imports a contingency as does a *gift* expressly at the period. Nor is the implication of intention from these words, to be varied, because it does not appear in the case before us whether one of the children was a daughter, whose marriage might possibly have been promoted by having a vested legacy—a circumstance which it was thought, in *Patterson* v. *Hawthorn*, would naturally weigh with the testator to give the legacy

absolutely—for if the legacy of a daughter would be vested by that consideration, the legacy of a son must be so also, where the same words are to be applied to both. The ruling principle of that case is, that where there is no room, in the event of a child's death, living the first legatee, for an implication of intention to give its share to the survivors, a limitation to the children, *or their heirs*, shows no more than a design to give it to them while living, with capacity to transmit it when dead to such persons as may by the laws of the land be their legal representatives; to express it differently, that the particular words create a limitation, and not a bequest over. This principle removes every difficulty from the case; for where the enjoyment of an entire fund is given in fractional parts, at successive periods which must eventually arrive, the distinction betwixt time annexed to payment, and time annexed to the gift, becomes unimportant. In such a case, it is well settled that all the interests vest together. Thus a legacy to one for life, and to another at his death, goes to the legal representatives of the latter, should he not live to take it himself. This rule was recognised in *Balmain* v. *Shore*, (9 *Vez.* 50) as governing dispositions of property in general, though for peculiar reasons it was not applied in that instance to a limitation, in a partnership deed, to the widows of the partners for their respective lives, and subsequently to their children. But other cases conclusively show that where the enjoyment is divided into successive periods, all the fragments of it vest at the same time. Such is the effect of *Benyon* v. *Maddeson*, (2 *Bro. C. C.* 75) *Monkhouse* v. *Holme*, (1 *Bro. C. C.* 298) *Taylor* v. *Longford*, (3 *Vez.* 119) *Blamire* v. *Geldart*, (16 *Vez.* 314) *Scurfield* v. *Howes*, (3 *Bro. C. C.* 90) *The Attorney General* v. *Crispin*, (3 *Vez.* 386) and some others. In the application of the principle to cases where only dividends or interest is given to the first legatee, the difficulty is to determine whether the context shows that the ownership of the fund was not intended to pass in his lifetime; for where the disposition of the produce is distinct from that of the capital, the interest in the latter will vest only at the time of its distribution. There are many cases to this effect, such as *Billingsley* v. *Wills*, (3 *Atk.* 219) and *Bennett* v. *Seymour*, (*Amb.* 521) in each of which the ultimate objects of the testator's bounty could not be ascertained before the death of the first legatee; and *Thickness* v. *Leege*, (3 *Bro. P. C.* 365) *Smith* v. *Vaughan*, (*Vin. Abr. Tit. Devise, pl.* 32) and *Spencer* v. *Bullock*, (2 *Vez. Jr.* 687) in which the ulterior bequests would have frustrated a principal purpose of the will had they vested in the lifetime of the first legatee. A bequest of dividends is a clear exception to the general rule; for in *Batsford* v. *Kebbel*, (3 *Vez.* 363) Lord Rosslyn pronounced them to be no part of any general fund, but always a distinct subject of separate bequest. Cases of interest are more critical; yet in most of the preceding cases adduced in support of the general rule, the first legatee had

[King v. King.]

no more than the interest accruing on a mortgage or a trust fund. And the cases instanced as exceptions to the rule are perhaps not properly such, but instances in which the rule of interpretation has been overborne by an opposing intention collected from all the parts of the will. But to preclude the operation of the rule in any case, such an intention must be clear, manifest, and indisputable. What is there in this will then to show the ulterior limitations to be palpably contingent? "I give and bequeath," says the testator, " to my beloved wife, Catharine, the yearly interest of six hundred pounds, to be paid to her yearly and every year during her widowhood and no longer; which sum of six hundred pounds I order my executors from time to time to put to interest for the purpose aforesaid; and after my wife's decease, or widowhood, I give and bequeath the said principal sum to my children, hereafter named, *or their heirs,* to be divided among them share and share alike." The effect of the words " or their heirs," (and there is nothing else to import contingency) is disposed of, as I have said, by *Patterson* v. *Hawthorn;* but even if they were not, they seem to be referrible rather to the time of distribution than to the vesting of the interest in the fund. There was to be no survivorship to the exclusion of the issue of deceased children; and there was, therefore, nothing in the terms of the bequest inconsistent with the vesting of a present interest in the children named. Henry King was one of those children; and we are therefore of opinion that the interest in contest vested in him in his lifetime.

.        Judgment affirmed.