# McClure's Appeal.

1. A testator gave to his wife personal property "and the whole of my real estate during her life, if she remain my widow; but if she marry again she is to have but half of my real estate during her life. \* \* \* At my wife's decease, my real estate to be sold and equally divided amongst my nephews and nieces, namely, my brother Alexander's children, Sarah (and others, naming each), and my sister Margaret Kelly's children (naming each), each to have an equal share." *Held.* 1. That the direction to sell was a conversion. 2. The legacies to the nephews and nieces were vested.

2. Sarah married and died in the life of the widow, intestate and without issue. *Held*, that her husband surviving was entitled to her legacy.

3. To work a conversion the direction to sell must be positive and explicit, irrespective of all contingencies and independent of all discretion.

4. That the period of the sale is remote and the conversion cannot made till the time arrives, is not an exception to the rule.

[McClure's Appeal.]

5. What determines the vesting of a legacy, is whether the time is annexed to the substance of the gift as a condition precedent.

6. If there be an antecedent absolute gift independent of the direction and time of payment, it is vested; if there be no substantial gift, but one implied from the direction to pay, it is contingent; unless from the circumstances and the face of the will a contrary intention appear.

7. When the fund is given to one for life or till the legatee reach a particular age, &c., the interest is immediately vested, being in the nature of a remainder.

8. Though there be no other gift than in the direction to pay or to distribute *in futuro*, yet if the postponement be for the convenience of the fund, or to let in some other interest, the vesting will not be deferred.

9. If the enjoyment be postponed to accommodate the estate, to pay debts, &c., not chiefly on account of the character of the donee, the vesting is immediate.

10. If the arrival of the time be a condition, without which the bequest would not have been made, it is contingent.

11. If the arrival of the time is not absolutely necessary before the gift can attach to the legatee, it is vested: and the payment merely postponed.

12. Vesting rather than contingency is favored, and in doubtful cases the gift is treated as vested.

November 16th 1872.    Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the Orphans' Court of *Allegheny county*: No. 148, to October and November Term 1872.

The proceedings in this case arose upon the distribution of the estate of William McClure, deceased, who died in 1848, having made his will, dated July 6th 1844, as follows:—

"First. I will that all my just debts and funeral [expenses] shall be fully satisfied out of my personal estate. I will and bequeath to be paid to my wife, Jane, all my household and kitchen furniture, and the one-half of all my other personal property, and the whole of my real estate during her life, if she remain my widow. But if she marry again, she is to have but the one-half of my real estate during her life.

"I will and bequeath to my brother Alexander, one thousand dollars, and my sister, Elizabeth Carothers, three hundred dollars, out of my personal estate, if there should be enough not devised to pay them; if not, each to get their proportion of what is. If there should be any over paying them, it is to be divided equally among all my nephews and nieces. At my wife's decease, my real estate to be sold and equally divided amongst my nephews and nieces, namely, my brother Alexander's, Francis, Alexander, Samuel, James, Sarah, Martha and Andrew; my sister Margaret Kelly's children, John Boyd, Martha, Margaret, Richard and William; my sister Elizabeth Carothers' son John, each to have an equal share.

"The above-named Samuel, son of my brother Alexander, I will that his share be put into the hands of his brothers Francis and Alexander, whom I appoint guardians for him, and allow them

to put his share out on interest for him, the interest only to be applied to his use, and not the principal. At his death the principal to be equally divided amongst his brothers and sisters or their heirs." * * *

He appointed John Pollock and Hezekiah D. Gamble executors.

Sarah McClure, one of the children of the testator's brother Alexander, married James Pearce, and died in February 1858, intestate and without issue, but leaving her husband to survive her.

The testator's widow did not marry again; she died in January 1868.

The testator's real estate was sold in October 1870, under the directions in the will. John Pollock, the surviving executor, settled his account, which was confirmed *nisi*, January 14th 1871. John M. Kennedy, Esq., was appointed auditor to distribute the balance in the hands of the executor.

James Pearce, the surviving husband of Sarah, a daughter of Alexander McClure, claimed her share, alleging that the order to sell the real estate was a conversion; that the legacies to Alexander's children were vested, and that therefore he was entitled, as surviving husband, to receive her share. The other nephews and nieces alleged that there was no conversion; that the legacies did not vest till the death of the widow of the testator, and that therefore the legacy of Sarah would go to those of the nephews and nieces living at the death of the widow. The auditor reported that the direction of the will to sell the real estate was a conversion, and that the legacies to the nephews and nieces of the testator vested on his death; he, therefore, awarded Sarah's share to James Pearce, her surviving husband.

The nephews and nieces excepted to the report of the auditor. The Orphans' Court overruled the exceptions, and confirmed the report.

Alexander McClure and others, nephews and nieces of the testator, appealed to the Supreme Court, and assigned the decree of confirmation for error.

*Hampton & Dalzell* and *H. D. Foster*, for appellants.—The intention of the testator is superior to all rules: 2 Williams on Exrs. 1103; Bayard *v.* Atkins, 10 Barr 15; Lamb *v.* Lamb, 8 Watts 184.

The testator's intention is that the estate should be kept within the number of his nephews and nieces, and that the death of any one should not result in giving his or her share to a stranger: Patterson *v.* Hawthorn, 12 S. & R. 112. A provision for a particular member of a class is to be applied to all members of the class: 2 Redfield on Wills 622, pl. 40. A legacy is vested or contingent as the time appears to have been annexed to the *gift*, or to the *payment* of it: 2 Williams on Exrs. 1099; Moore *v.*

[McClure's Appeal.]

Smith, 9 Watts 403; Batsford *v.* Kebbell, 3 Vesey 363; King *v.* Crawford, 17 S. & R. 118; Bowman's Appeal, 10 Casey 19.

*R. & S. Woods*, for appellee.—The direction to sell was a conversion: Erwin's Estate, 6 P. F. Smith 405; Brolasky *v.* Gally, 1 Id. 509; Evans's Appeal, 13 Id. 183; Willing *v.* Peters, 7 Barr 287; Allison *v.* Wilson, 13 S. & R. 330; Morrow *v.* Brenizer, 2 Rawle 185; Burr *v.* Sim, 1 Wharton 265; Smith *v.* Starr, 3 Id. 62; Rice *v.* Bixler, 1 W. & S. 445.

The legacies were vested: McGill's Appeal, 11 P. F. Smith 46.

The opinion of the court was delivered, May 17th 1873, by

WILLIAMS, J.—The rule is well settled, that land directed to be converted into money, or money into land, is to be regarded in equity as that species of property into which one or the other is so directed to be converted; and this rule obtains whether the direction is given by deed or will. But the direction to convert must be positive and explicit, irrespective of all contingencies and independent of all discretion. If the direction to sell is absolute, it is no exception to the rule that land directed to be sold and turned into money is to be considered as money, from the death of the testator, for all the purposes of his will, because the period of sale is remote, and the conversion cannot be made until the time arrives: Rinehart *v.* Harrison's Ex'rs, Bald. 177; Allison *v.* Wilson's Ex'rs, 13 S. & R. 330; Willing *v.* Peters, 7 Barr 287; Bleight *v.* Man. and Mech. Bank, 10 Id. 131; Parkinson's Appeal, 8 Casey 455; Anewalt's Appeal, 6 Wright 414; Chew *v.* Nicklin, 9 Id. 84; Brolasky *v.* Gally's Ex'rs, 1 P. F. Smith 509; Horner's Appeal, 6 Id. 405; Evans's Appeal, 13 Id. 183. The testator in the case before us directed, at his wife's decease, his real estate to be sold and equally divided amongst his nephews and nieces. The direction is positive and explicit; and it follows that it operated as a conversion of the real estate into money from the testator's death, and that it is to be treated as money for all the purposes of his will. Were, then, the legacies to the testator's nephews and nieces vested or contingent? As a general rule, a legacy is to be deemed vested or contingent, just as the time shall appear to be annexed to the gift, or the payment of it. If futurity is annexed to the substance of the gift, vesting is suspended; but if it appears to relate to the time of payment only, the legacy vests instantly. The point which determines the vesting is not whether time is annexed to the gift, but whether it is annexed to the *substance* of the gift, as a condition precedent. Where there is an antecedent absolute gift, independent of the direction and time of payment, the legacy is vested; but where there is no substantive gift, and it is only implied from the direction to pay, the legacy is contingent, unless from particular circumstances or

22 P. F. SMITH—27

[McClure's Appeal.]

the whole face of the will a contrary intention is to be collected: 2 Wm's Ex'rs 1059. Here there is no substantive gift to the testator's nephews and nieces independent of the direction that at his wife's decease his real estate be sold and equally divided amongst them, and unless it appears from his whole will that he intended that the legacies should vest immediately upon his death, they must be regarded as contingent. Where the fund, which is the subject of the legacy, is given to another person beneficially for life, or until the legatee arrives at a particular age, or until certain debts are paid, the legatee will take an immediate vested interest in the subject, since such bequests are in the nature of remainders; the rule as to which is, that the interests of the first and subsequent takers vest together: Lane *v.* Goudge, 9 Ves. 226; Balmain *v.* Shore, Id. 507. Though there be no other gift than in the direction to pay or distribute *in futuro*, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question. Thus where stock is bequeathed to A. for life, and after his decease to trustees, upon trust to sell and pay, and divide the proceeds to and between C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator: 1 Jarm. on Wills 764. Where the enjoyment of the gift over is postponed to accommodate the estate, or for the payment of debts, or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting: 2 Redf. on Wills 236, sect. 37. In Bayley *v.* Bishop, 9 Ves. 6, there was a devise to the testator's wife for life of all his messuages, lands, &c., and from and after her decease, to trustees upon trust to sell the same, and among other bequests to lay out 500*l.* in an annuity for the life of his son; and it was held to be a vested interest in the son surviving the devisor but dying in the lifetime of the wife, on the ground that the sale and payment were postponed merely on account of the estate for life in the widow, and not with reference to the circumstances of the legatee. The mode or form of the bequest seems to be regarded by Vice-Chancellor Wigram as immaterial. The gift of a legacy, under the form of a direction to pay at a future time, or upon a future event, is, in his opinion, not less favorable to vesting than a simple and direct bequest of a legacy at a like future time, or upon a like event. The question is one of substance and not of form; and in all cases it is whether the testator intended it a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; and the answer to this question must be sought for out of the whole will, and not in the

[McClure's Appeal.]

particular expressions only in which the gift is made : Leeming *v.* Sherratt, 2 Hare 14.

If the arrival of the time is a condition, without which the testator would not have made the bequest, as in the case of marriage or puberty, then, in the very nature of the thing, the time is annexed to the substance of the gift ; and if the condition or contingency does not happen, the gift never arises. But if the time does not appear to have been fixed by the testator as absolutely necessary to have arrived before any part of his bounty can attach to the legatee, the legacy vests immediately, and the time of payment is merely postponed, not being annexed to the substance of the gift : Monkhouse *v.* Holme, 1 Br. C. C. 298 ; May *v.* Wood, 3 Id. 471. The same general principles are fully recognised and asserted in our own cases. Thus it is said in Letchworth's Appeal, 6 Casey 175, that the law always inclines to treat the whole interest in property as vested rather than contingent, and, therefore, in case of doubt, it declares the interest vested; that a devise or legacy depending upon an event that is sure to happen is vested if the happening of the event does not form a part of the description of the devisee, and if the suspensive expressions can, consistently with, or by the aid of other parts of the will, be properly interpreted as referring not to the vesting of the title, but to the vesting of the enjoyment : Smith's Executory Interests, secs. 309, 310. In that case the testator directed that " at and after the decease of my said wife, and in case she should marry, and when my youngest child shall arrive at the age of twenty-one years, then it is my will that all my estate shall be distributed by my executors agreeably to the intestate laws of this Commonwealth." He died in 1841, leaving a widow and three daughters. The widow died in 1844. The eldest daughter was married in 1847, and, having survived her issue, died in 1849. The youngest daughter arrived at the age of twenty-one years on the 2d of January 1856. The executors, under a power in the will, sold the real estate of the testator, and settled a final account in which they charged themselves with a balance for distribution. It was held that the testator's children took a vested interest under the will, and that one of the daughters having died before the time fixed for distribution, leaving no child surviving, her husband was entitled to her share. This case cannot be distinguished in principle from the one before us ; and the same general doctrine is maintained in Manderson *v.* Lukens, 11 Harris 31 ; Parkinson's Appeal, 8 Casey 455 ; Chew's Appeal, 1 Wright 23 ; Young *v.* Stoner, Id. 105 ; Ross *v.* Drake, Id. 373 ; Womrath *v.* McCormick, 1 P. F. Smith 504. In Chew's Appeal it was said that generally a bequest after the death of a particular person, to whom an antecedent interest is given in the same will, is held not to denote a condition that the legatee shall survive such a person, but only to mark the time when the gift

shall take effect in possession—that possession being deferred merely on account of the life interest limited to the person on whose death the gift is to take full effect. See to the same effect Blamire *v.* Geldart, 16 Ves. 314. In Womrath *v.* McCormick, the testator gave his wife a life interest in all his estate, and at her decease provided that the property should be divided into as many shares as there were children living, or the issue of deceased children, and each to have one share. It was held to create vested interests in such children as survived the testator from the time of his death; the distribution only being deferred. In Horner's Appeal, 6 P. F. Smith 405, the will is substantially the same as in this case; and it was there held that the interest of one of the children who died in the lifetime of the wife, to whom an antecedent life estate was given, passed to the purchaser at the Orphans' Court sale, because the administrator, aside from the authority of the Orphans' Court, had power to sell the interest as personalty, and his deed was an equitable assignment of the personal interest of the intestate in the proceeds of the testator's realty when it should be converted into money, as directed by his will. It is true that the question whether the legacy was vested or contingent was not mooted, but the fact that it was not raised by the counsel, the auditor, or the court, is all the more significant that it was regarded as a vested legacy, for if the legacy was contingent, the purchaser would have acquired no interest in the proceeds of sale for distribution. Where the enjoyment of an entire fund is given in fractional parts, at successive periods, which must eventually arrive, the distinction between time annexed to payment and time annexed to the gift becomes unimportant. In such a case it is well settled that all the interests vest together. Thus a legacy to one for life, and to another at his death, goes to the legal representatives of the latter, should he not live to take it himself: King *v.* King, 1 W. & S. 205. Where the purpose is to give interests to different persons in succession, each gift is alike immediate, though the second taker cannot have the benefit until after the death of the first: Blamire *v.* Geldart, *supra.*

There can be no doubt, under these authorities, that the legacies in this case vested in the testator's nephews and nieces immediately on his death. It is clear that the testator did not intend to die intestate as to any portion of his property. After making provision for his wife, by giving her all his household and kitchen furniture, and one-half of all his other personal property, and the whole of his real estate for life, defeasible as to a moiety thereof in the event of her marriage; and giving to his brother Alexander and his sister Elizabeth certain pecuniary legacies out of his personal estate, he directs the residue thereof, if any, to be equally divided among all his nephews and nieces; and at his wife's decease, his real estate to be sold and equally divided amongst his

nephews and nieces, individuating them by their names, and declaring that each is to have an equal share. The gift is to his nephews and nieces, not as a class, but by name as individuals, without words of survivorship, and with no bequest over, in the event of their death, in the life of the widow. The plain inference is, that each was expected to take a share at the decease of the testator. If the share of each nephew and niece were not so vested, and would not pass to their representatives on their decease, they must be regarded as undisposed of, and an intestacy to that extent would thus be created.

The testator was making an equal distribution of his real estate among his nephews and nieces, and the distribution was postponed, as is manifest from the whole face of the will, in order to make comfortable provision for the widow in lieu of her dower under the intestate act. If this necessity had been out of the way, the distribution would have been immediate. There was no consideration or circumstance, immediately connected with the legatees, which was the ground of the postponement. It cannot be reasonably inferred that the testator intended that the gift to his nephews and nieces should depend on their surviving the widow; and that if they died during her life, leaving issue, their shares should go to his next of kin to the exclusion of their children. If there had been no conversion of the real estate, there can be no doubt that they would have taken a vested interest in the remainder. Why should the direction to sell and divide the proceeds make the gift contingent? It is manifest from the whole face of the will that the gift was intended to be absolute; the wife's decease is not a condition precedent to its vesting, but is merely the time fixed for its enjoyment. There was, then, no error in the construction given to the will by the auditor, and in distributing to the appellee the share of the proceeds of the land belonging to his deceased wife; and the decree of the Orphans' Court must, therefore, be affirmed.

Decree affirmed, at the costs of the appellants.